IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Donzel Shepherd, Individually,** | : | |
| | : | |
| **Plaintiff,** | : | Case No: 2:16-cv-776 |
| | : | |
| v. | : | Judge: |
| | : | |
| **Opportunities for Ohioans with Disabilities** | : | Magistrate Judge: |
| | : | |
| and | : | |
| | : | |
| **Kevin L. Miller, in his official capacity,** | : | |
| | : | |
| **Defendants.** | : | |

**COMPLAINT**

**I.     INTRODUCTION**

1. Each paragraph in this complaint incorporates all others.

2. Plaintiff, Donzel Shepherd, is a person with a disability.  He applied for, was found eligible for, and received services from Opportunities for Ohioans with Disabilities ("OOD"), Bureau of Vocational Rehabilitation ("BVR").

3. Plaintiff appealed Defendants' decision to close his vocational rehabilitation ("VR") services case and deny him a change in vocational rehabilitation coordinator; and pursuant to 29 U.S.C. §722(c)(5) a Fair Hearing was held in Columbus, Ohio on June 22 and July 7, 2016.  A decision was rendered July 25, 2016, denying Plaintiff's appeal.

4. Plaintiff files this civil action for *de novo* review of that decision pursuant to 29 U.S.C. § 722(c)(5)(J).

{00297154-4}

## II. JURISDICTION AND VENUE

5. This cause of action is found at 29 U.S.C. § 722(c)(5)(J), which allows for a civil action to be filed without regard to the amount in controversy.

6. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, general federal question jurisdiction, because the Plaintiff's claim arises under a federal statute, the Rehabilitation Act of 1973.

7. Venue is proper in the Southern District of Ohio, Eastern Division, because Defendants are located in this district within the meaning of 28 U.S.C. § 1391 and a substantial part of the events or omissions giving rise to this Complaint occurred in this district.

## III. PARTIES

8. Plaintiff, Donzel Shepherd, is an individual with a disability who resides in Cleveland, Ohio.

9. Defendant, Opportunities for Ohioans with Disabilities, headquartered in Columbus, Ohio, is the designated state unit in Ohio that provides vocational rehabilitation services to persons with disabilities pursuant to the Rehabilitation Act of 1973, as amended. 29 U.S.C. §701, *et seq*.

10. Defendant, Kevin L. Miller, is the Executive Director of OOD.

## IV. FACTS

11. The administrative record, which Defendants must file with this Court pursuant to 29 U.S.C. §722(c)(5)(J), including the entire record of the Fair Hearing held June 22 and July 7, 2016, is hereby incorporated by reference.

12. Plaintiff is a person with a disability who has been found eligible to receive vocational rehabilitation services from the state vocational rehabilitation agency.

13. Plaintiff was in a swimming accident when he was a teenager and this broke the

c5-c6 vertebra in his neck. He uses an electric wheelchair and has limited use of his hands. He relies on personal care assistance for daily living activities such as bathing, dressing, housekeeping etc.

14. He is able to use a computer, iPad and cell phone due to assistive technology which allows him to use voice dictation software.

15. Plaintiff sought services from OOD and BVR so that he could work.

16. BVR is the division of OOD that provides rehabilitation services to individuals, like Plaintiff, whose disabilities are not blindness or other visual impairment.

17. The purpose of the Rehabilitation Act, as set forth in 29 U.S.C. §701(b), *et seq*. includes empowering individuals with disabilities to maximize employment, economic self-sufficiency, independence, inclusion, and integration into society.

18. The purpose of vocational rehabilitation as set forth in § 720 of the Rehabilitation Act is to provide federal funding to states to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that such individuals may prepare for and engage in gainful employment.

19. Defendant has cooperative agreements with various agencies around the State to provide vocational rehabilitation services to eligible individuals. These are known as contract agencies. Vocational Guidance Services is one of those agencies.

20. The counselors for these contract agencies are known as coordinators. For purposes of this litigation the terms counselor or coordinator may sometimes be used interchangeably.

21. Plaintiff's case was assigned to Vocational Guidance Services, a contract agency.

22. Plaintiff was found eligible for services in 2009.

23. After he was found eligible for services, Plaintiff worked cooperatively with his VR coordinators to determine a vocational goal and the services he would need to reach that goal.

24. At this time Plaintiff was driving a van which had been modified for him by BVR in a prior case which culminated in his having employment.

25. As the van was over 15 years old and in need of repairs he requested that Defendants modify another van for him.

26. His VR coordinator agreed to this because being able to drive himself would increase his employment opportunities.

27. She documented that it was a health and safety risk for him to use the public paratransit system.  Because of his disability he cannot tolerate waiting outside in the heat and cold.  Because he uses an electric wheelchair he is very limited in his ability to be out in wet weather.

28. She also documented that being unable to drive himself would limit his business opportunities in his chosen field.

29. He and his VR coordinator jointly determined that being self employed as a Benefits Counselor was an appropriate vocational goal.

30. A Benefits Counselor works with Social Security beneficiaries to help them understand the impact of work on their Social Security and other benefits.  It involves interviewing the beneficiaries, obtaining appropriate releases and gathering documents from the Social Security Administration to write a detailed report.  It can also involve follow up meetings with the individual beneficiaries. It does not involve learning about practices or procedures of the

VR agency.

31. Plaintiff and his VR coordinator jointly developed an Individualized Plan for Employment ("IPE") which laid out the services he would need to become a Benefits Counselor.

32. Among the services listed was training in benefits analysis. Plaintiff successfully completed a course in benefits analysis given by Cornell University and obtained the necessary credentialing to do this work.

33. He also worked with several business consultants to develop a business plan to do benefits analysis.

34. Defendants have established a policy regarding conditions for providing self-employment services, and published this policy as Ohio Admin. Code 3304-2-66, requiring OOD to provide services only after an attainable, written business plan is in place.

35. Mr. Shepherd's written business plan indicated that he would market his services in, around and beyond Cuyahoga County.

36. Plaintiff's VR coordinator agreed that he needed a vehicle modification for a new van in order to reach his goal of being a Benefits Counselor and placed this service on his IPE in June of 2010.

37. In December of 2013 Defendants adopted a new policy for approving self-employment plans. This policy required that all business plans be approved by a self-employment review committee.

38. Amy Taylor became his coordinator in early 2015 due to staffing changes.

39. Plaintiff did not request this change in coordinator, and it was a valid exercise of administrative authority to oversee personnel and staffing levels.

40. Ms. Taylor testified at the hearing that she reviewed Plaintiff's file and agreed

that as of March 2, 2015 Mr. Shepherd was meeting all of the responsibilities on his then-current IPE, labeled Plan Number 14.

41. In late March of 2015 Plaintiff's business plan was submitted to OOD's self-employment review committee. The case note accompanying the submission indicated that he needed a van modification in order to broaden his service area and without the ability to drive himself, his business would be limited.

42. The case note indicated that the $29,000 cost of the van would be added to the IPE as Plaintiff's contribution, meaning that Plaintiff agreed to pay for the van and OOD would pay for the vehicle modification. The note also indicated that the dates listed on the IPE for completing the vehicle modification would be extended.

43. Plaintiff's disability has not changed and his transportation needs have not altered since 2009 when he was found eligible for services or since June 2010 when he signed his first amended IPE which included a van modification.

44. Plaintiff's current IPE at that time, Plan Number 14, signed October 2013, included the van modification, as had every one since it was first added in June 2010.

45. On June 30, 2015, in a phone call with Ms. Taylor, her supervisor Laura Lamb and April Bagley of OOD, Plaintiff was suddenly informed that the vehicle modification service was "off the table."

46. Removal of the vehicle modification from the IPE after some thirteen plans and five years of OOD consistently stating that OOD would pay for vehicle modification is a reduction, suspension, or cessation of vocational rehabilitation services.

47. Plaintiff was not told or provided any notice in writing on or about June 30, 2015 that he could appeal this decision or that he could contact the Client Assistance Program

("CAP") to provide assistance to him in this appeal.

48. On August 21, 2015, Plaintiff signed an amendment to his IPE, labeled Plan Number 15, which did not contain the service of a vehicle modification. The communications sent regarding this new IPE between him and Amy Taylor do not contain any document describing his appeal rights or the availability of the CAP.

49. Before signing this amended IPE, Plaintiff was initially told his options were to sign the amended plan, change his vocational goal to employment, or have his case closed.

50. Amy Taylor told Plaintiff, and noted in her case notes, on July 28, 2015 that he had to sign the amended plan or OOD would not be able to do anything for him.

51. While the August 21, 2015 Plan Number 15 contains an acknowledgement signed by Coordinator Amy Taylor and Counselor Esther Shimansky that a copy of the Consumer Fact Sheet for the IPE, including information about rights, among other things, was provided to the consumer, the OOD file as provided to Plaintiff does not contain a copy of the Consumer Fact Sheet relating to the August 21, 2015 Plan Number 15.

52. The OOD file as provided to Plaintiff does not, in fact, contain any copy of the Consumer Fact Sheet or any evidence other than OOD staff signatures regarding the provision of appeal rights at all until an email from April Bagley, Contracts Manager for OOD, to Plaintiff on December 23, 2015 linked to OOD's website with appeal rights.

53. Plaintiff testified that he never received any notification of appeal rights, not even a copy of the Consumer Fact Sheet, from June 30, 2015 until the closure of his case in December 2015, when he did finally receive that information in writing.

54. Plaintiff made several requests for a new VR coordinator in 2015 as he stated Ms. Taylor was not supportive, including for example an incident in November 2015 when he

gave a very important, critical presentation for which Ms. Taylor stated she would provide feedback, but did not do so.

55. Ms. Taylor testified she was present at the event and spoke with Plaintiff twice that day, but did not tell Plaintiff why she missed his presentation.

56. Ms. Taylor testified that she had gotten approval to skip the presentation from her supervisor, Laura Lamb, but Ms. Lamb testified at hearing that she gave no such approval.

57. No one explained to Plaintiff any reason why Ms. Taylor missed Plaintiff's presentation until after his case was closed and he filed his appeal.

58. Throughout her involvement with Plaintiff's case, Ms. Taylor showed a lack of understanding of his marketing strategy, how he planned to interact with his clients, and the functional limitations of his disability.

59. Ms. Taylor repeatedly threatened to cut off communications with Plaintiff, and ignored Plaintiff's statements and evidence in the OOD file about his disability-related transportation needs relative to his business.

60. Ms. Taylor instead wrote in her notes that Plaintiff's lack of cooperation or failure to follow through might be because of a neurological or medical problem.

61. Ms. Taylor testified she did not tell Plaintiff that she thought he might have a neurological or medical problem.

62. Plaintiff requested more than once to work with a new VR coordinator as in light of all the facts and circumstances, Ms. Taylor was unquestionably unsupportive; however, each of these requests was denied.

63. Plaintiff's case was closed on December 15, 2015.

64. Mr. Shepherd filed an appeal after his case was closed.

65. Mr. Shepherd appealed the closure of his case, the denial of his rights and the refusal to grant his request to have his case reassigned to a new VR coordinator.

66. Pursuant to Ohio rules an informal meeting was held to try to resolve the appeal. At the informal meeting and in her letter following the informal meeting, Nikki Miraglia, a VR supervisor, stated that the denial of a VR coordinator change was not an appealable issue.

67. At the hearing Ms. Miraglia testified that she did not make any decision about the denial of Plaintiff's request for a coordinator change because she believed it was not an appealable issue at all.

68. In her letter following the informal meeting, Ms. Miraglia stated that if Plaintiff did not agree with the removal of services from his IPE, he had the right not to agree to sign the August 21, 2015 IPE.

69. Ms. Miraglia does not address in her letter following the informal meeting that Ms. Taylor told Plaintiff that he had to sign the amended August 21, 2015 IPE or OOD would not be able to do anything for him.

70. Ms. Miraglia also does not address why Plaintiff was never provided with his appeal rights between June 30, 2015 and the closure of his case.

71. In his decision, the hearing officer makes no statement about Defendant's obligation to notify Plaintiff of his appeal rights when Plaintiff was told that a vehicle modification was off the table on June 30, 2015.

72. In his decision the hearing officer declined to find that Defendants had to notify Plaintiff of his rights when he signed the amendment to his IPE on August 21, 2015 because "Taken literally this would require a formal notification of rights each time an IPE was amended as the definition of reduction or denial would be amended so broadly as to include every change

{00297154-4} 9

in an IPE that does not increase or add services to be provided." (Hearing Officer Decision, 10).

73. The hearing officer also cited to the fact that Plaintiff signed the August 21, 2015 IPE and did not include any comments on it, stating that Plaintiff's course in benefits analysis led him to find Plaintiff's "testimony that he signed the [August 21, 2015 IPE] out of frustration and due to a feeling that he had not [*sic*] other choice not to be creditable." (Hearing Officer Decision, 11).

74. Plaintiff's training and experience in the area of benefits eligibility and application procedures does not include any training or experience in the area of VR services, rights, or denials.

75. Plaintiff's knowledge or lack thereof regarding his appeal rights, as attributed to him by the hearing officer based on his benefits analysis training, is wholly immaterial as to the credibility of Plaintiff's testimony about what information was provided when and the fact that Plaintiff felt forced to sign the August 21, 2015 IPE.

76. Plaintiff testified that he objected to signing the August 21, 2015 IPE repeatedly, and Ms. Taylor's notes support his testimony, culminating in Ms. Taylor's ultimatum for Plaintiff to sign the IPE or OOD would not provide any other services.

77. Ms. Miraglia's letter following the informal also supports that Plaintiff objected to signing the August 21, 2015 IPE repeatedly.

78. The hearing officer did not address either of these sources of support for Plaintiff's testimony in his decision.

79. The hearing officer found that the only time the denial of a VR counselor/coordinator change can be an appealable issue is if all other available remedies have been exhausted.

80. He found that Plaintiff had not met this newly created standard.

81. The hearing officer did so despite sub-regulatory guidance on this issue from the Department of Education – not the Department of Labor as the hearing officer mistakenly cites - in its Program Assistance Circular RSA-PAC-88-03, which was provided as Plaintiff's Exhibit A at the hearing.

82. In that document, the Department of Education notes that the coordinator "can impact significantly upon the individual's achievement of a vocational goal" and makes clear that "an effective counseling relationship is essential; therefore, if other available remedies fail, failure to obtain a change of counselor or coordinator can be appealable through the established appeal process." (RSA-PAC-88-03, Plaintiff's Exhibit A, 2).

83. In his decision, the hearing officer inserts a new exhaustion requirement, stating that Plaintiff "must have exhausted all other available remedies" for this denial of a request for a new coordinator to be appealable. (Hearing Officer Decision, 12).

84. Plaintiff repeatedly expressed his dissatisfaction with Ms. Taylor's level of support as his coordinator. Plaintiff appropriately raised this issue with Ms. Taylor's supervisor. Ultimately, Plaintiff raised the issue on appeal; it was mentioned at the informal meeting; and then, at the hearing. Plaintiff was not at any time made aware he was required to pursue any other avenue to exhaust any kind of remedies or process as later suggested by the hearing officer.

## V. FIRST CAUSE OF ACTION

85. The hearing officer's decision stating that OOD is not required to provide a notice of appeal rights under the Rehabilitation Act is flatly contrary to the plain language of the law and must be overturned.

86. Federal law and implementing regulations require that the hearing officer issue a decision based on the provisions of the approved State plan, the Rehabilitation Act, 29 U.S.C. §

701, *et seq.* and its implementing regulations, and State regulations and policies that are consistent with the federal requirements specified in the title. 29 U.S.C. § 722(c)(5)(A), 34 C.F.R. § 361.57(e)(3)(i)-(ii).

87. Federal law and implementing regulations require that OOD shall establish procedures for review of determinations made by its personnel that affect the provision of vocational rehabilitation services to eligible individuals. 29 U.S.C. § 722 (c)(1), 34 C.F.R. § 361.57(b)(1)(i), 34 C.F.R. § 361.57(e).

88. OOD has done so, providing for a process of consumer appeals. Ohio Admin. Code 3304-2-62.

89. Federal law and implementing regulations require that OOD's procedures provide an eligible individual with notice of the right to obtain review of such determinations, the right to pursue mediation, the availability of assistance from the CAP, and any applicable State time limit on requests for mediation or hearing, and any procedures by which the request shall be made. 29 U.S.C. § 722 (c)(2)(A), 34 C.F.R. § 361.57(b)(1)(i-v).

90. Federal law and implementing regulations explicitly require that OOD provide this notice in writing when an individual applies for vocational rehabilitation services; at the time the individualized plan for employment for the individual is developed, and upon reduction, suspension or cessation of vocational rehabilitation services for the individual. 29 U.S.C. § 722 (c)(2)(B)(i-iii), 34 C.F.R. § 361.57(b)(2)(i-iv).

91. OOD's failure to provide Plaintiff with the required written notice of his appeal rights and the availability of the CAP upon the reduction, suspension or cessation of services on or about June 30, 2015 violates federal law under the Rehabilitation Act as stated at 29 U.S.C. § 722 (c)(2)(B)(iii).

92. OOD's failure to provide Plaintiff with written notice of his appeal rights and the availability of assistance from the CAP upon the development of his IPE on or about August 21, 2015 violates federal law under the Rehabilitation Act as stated at 29 U.S.C. § 722 (c)(2)(B)(ii).

93. The decision of the hearing officer did not comply with the Rehabilitation Act or its implementing regulations, when it declined to enforce its provisions and stated by way of justification, with reference to 29 U.S.C. § 722 generally, "Taken literally this would require a formal notification of rights each time an IPE was amended as the definition of reduction or denial would be amended so broadly as to include every change in an IPE that does not increase or add services to be provided." (Hearing Officer Decision, 10).  The hearing officer's decision further ignored the fact that the Rehabilitation Act in fact explicitly requires just such a notification in several instances under 29 U.S.C. § 722 (c)(2), *et seq.* and implementing regulations at 34 C.F.R. § 361.57(b)(2),  *et seq.* including when an individual applies for VR services, when an IPE is developed, and upon reduction, suspension or cessation of VR services.

94. Accordingly, Defendants did not follow the statutory language of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* or its implementing regulations at 34 C.F.R. § 361.57 in providing vocational rehabilitation services to Plaintiff, and this has caused Plaintiff harm because he was not afforded an opportunity to appeal the denial of a critical service in his plan, a vehicle modification.

## VI.  SECOND CAUSE OF ACTION

95. The hearing officer's decision stating that OOD need not consider a denial of counselor change an appealable issue barring exhaustion of some unknown "all other available remedies" (Hearing Officer Decision, 12) is flatly contrary to the Rehabilitation Act, its implementing regulations and sub-regulatory guidance, and must be overturned.

96. Federal law and implementing regulations require that the hearing officer issue a

decision based on the provisions of the approved State plan, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and its implementing regulations, and State regulations and policies that are consistent with the federal requirements specified in the title. 29 U.S.C. § 722(c)(5)(A), 34 C.F.R. § 361.57(e)(3)(i).

97. Federal law requires that OOD shall establish procedures for review of determinations made by its personnel that affect the provision of vocational rehabilitation services to eligible individuals. 29 U.S.C. § 722 (c)(1).

98. Department of Education regulations implementing the Rehabilitation Act more specifically require that OOD "must develop and implement procedures to ensure that an applicant or eligible individual who is dissatisfied with any determination made by personnel of the designated State unit that affects the provision of vocational rehabilitation services may request … a timely review of that determination." 34 C.F.R. § 361.57(a).

99. OOD has done so, providing for a process of consumer appeals. Ohio Admin. Code 3304-2-62.

100. Plaintiff's prior coordinator to Ms. Taylor essentially looked at the same business plan, the same disability limitations, and the same VR service needs that Plaintiff had throughout his case, and determined that Plaintiff needed a vehicle modification, as using paratransit was a health and safety risk for Plaintiff and would limit his business opportunities.

101. Ms. Taylor looked at the very same information and came to a different conclusion, thereby unquestionably affecting his VR services.

102. Plaintiff requested several times to change his VR coordinator, was denied, and was not given the chance to appeal this issue, regardless of the merits of his request for a change in coordinator.

{00297154-4}    14

103. Department of Education sub-regulatory guidance from the Rehabilitation Services Administration clarifies that denial of a counselor or coordinator change can be appealable in the appeal process. In a still-valid Program Assistance Circular issued in 1988 to state rehabilitation agencies, the Department of Education specifically notes that "if other available remedies fail, failure to obtain a change of counselor or coordinator can be appealable through the established appeal process." (RSA-PAC-88-03, Plaintiff's Exhibit A, 2).

104. OOD violated the Rehabilitation Act and implementing regulations as clarified by sub-regulatory guidance in denying Plaintiff the opportunity to appeal the denial of his requested coordinator change as evidenced by Nikki Miraglia stating at the informal meeting, in her letter following the informal meeting, and finally testifying at the hearing that denial of a coordinator change was not an appealable issue at all, despite its being a determination impacting the provision of VR services.

105. OOD failed to resolve the issue of change in coordinator in discussion with Plaintiff and subsequently failed to make any other remedies available other than the established appeal process, meaning that "other available remedies" had failed within the meaning of RSA-PAC-88-03.

106. OOD's failure to consider Plaintiff's request for a coordinator change an appealable issue violates federal law and implementing regulations as clarified by sub-regulatory guidance, as OOD failed to "ensure that an applicant or eligible individual who is dissatisfied with any determination made by personnel of the designated State unit that affects the provision of vocational rehabilitation services" may appeal that decision, in specific contravention of 34 C.F.R. § 361.57(a).

107. The hearing officer's decision below is contrary to federal law and implementing

regulations as clarified by sub-regulatory guidance, and usurps Congress and the Department of Education, creating an entirely new standard that Plaintiff "must have exhausted **all** other available remedies" for the denial of a request for a new coordinator to even be appealable. (Hearing Officer Decision, 12, emphasis supplied).

108. The standard that federal law, implementing regulations and Department of Education sub-regulatory guidance all endorse is simply whether a decision affected the provision of VR services. 29 U.S.C. § 722 (c)(1), 34 C.F.R. § 361.57(a), RSA-PAC-88-03.

109. Plaintiff's request to change coordinator affected the provision of VR services as Ms. Taylor took the same evidence as prior coordinators and concluded differently in several respects, notably the vehicle modification, as well as exhibiting a lack of understanding and cooperation with Plaintiff. Thus, Plaintiff was entitled to appeal this issue, whatever the merits of his appeal, and was not afforded the opportunity to do so, in violation of the Rehabilitation Act and its implementing regulations.

110. Accordingly, Defendants did not follow the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, its implementing regulations, or the plain language of Department of Education sub-regulatory guidance, in providing vocational rehabilitation services to Plaintiff. This harmed Plaintiff because he was not afforded an opportunity to appeal the denial of a change in coordinator, which affected the provision of vocational rehabilitation services.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

A. Declare that the decision of the hearing officer is in violation of the Rehabilitation Act of 1973 as amended;

B. Declare that the Rehabilitation Act of 1973 as amended and its implementing regulations require Defendants to appropriately provide notice of appeal rights and the CAP;

C.Order Defendants to provide Plaintiff with an opportunity to appeal the issue of removal of vehicle modification from his plan to remedy his lack of opportunity to do so;

D.Declare that the Rehabilitation Act of 1973 as amended, its implementing regulations and sub-regulatory guidance require Defendants to consider denial of a counselor/coordinator change an appealable issue if it affects VR services;

E.Order Defendants to provide Plaintiff with an opportunity to appeal the issue of the denial of his request for a change in coordinator to remedy his lack of opportunity to do so;

F.Grant such further relief as this Court deems just and proper.

Respectfully submitted,

s/Barbara S. Corner
Barbara S. Corner (0064780)
bcorner@disabilityrightsohio.org
Trial Attorney
William G. Puckett (0087603)
wpuckett@disabilityrightsohio.org
Disability Rights Ohio
50 West Broad Street, Suite 1400
Columbus, Ohio  43215
Telephone:  (614) 466-7264
Facsimile:   (614) 644-1888

{00297154-4}17